**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALEXA KITCHENGS** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-5746** |
| | : | |
| **CINTAS CORPORATION NO. 2** | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                             **December 13, 2024**

An adult accepts a sales position and signs an employment agreement governing her relationship with her new employer. She agrees to arbitrate employment discrimination cases against her new employer. She also agrees an arbitrator will decide challenges to the scope or applicability of her arbitration obligation. She works for over eighteen months before her employer terminates her employment. She files administrative claims with the federal and Pennsylvania agencies who grant her a right to sue for employment discrimination. She then files suit here. Her former employer now moves to enforce the employment agreement. We grant the employer's motion. The former employee plainly delegated the decision whether her claim should be arbitrated to the arbitrator. The parties shall immediately move to their agreed arbitration to resolve the matter. We stay further progress in this case subject to review of the parties' compliance with their obligations under Federal Rule of Civil Procedure 1 for cases pending before us.

I. **Background**

A health care provider diagnosed Alexa Kitchengs with bipolar disorder in 2017.[1] Cintas Corporation No. 2 hired Ms. Kitchengs as a "Fire Sales Specialist" in August 2021.[2]

*Ms. Kitchengs signed an employment agreement with an arbitration obligation.*

Ms. Kitchengs and Cintas signed a Pennsylvania Employment Agreement for Sales, Service and Marketing Personnel when she began working for Cintas.[3] The parties agreed to arbitration for all disputes or differences in Section 7 of their Employment Agreement titled in all caps: "EXCLUSIVE METHOD OF RESOLVING ALL DISPUTES OR DIFFERENCES."[4] The parties introduced this exclusive method in the immediately preceding paragraph: "**THIS AGREEMENT WILL BE INTERPRETED, GOVERNED AND ENFORCED ACCORDING TO THE FEDERAL ARBITRATION ACT**."[5] This was the only bolded text in the entire body of the Employment Agreement.

The parties then specifically identified the terms of their agreement for exclusive resolution of disputes or differences:

- "Either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration."[6] The parties further agreed "the impartial arbitration proceeding . . . will be the exclusive, final and binding method of resolving any and all disputes between Employer and Employee."[7];

- "The rights and claims of Employee covered by this Section 7, including the arbitration provisions below, include Employee's rights or claims for damages as well as reasonable costs and attorneys' fees, caused by Employer's violation of any provision of this Agreement or any law, regulation or public policy. The rights and claims of

Employee covered by this Section 7, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under the Age Discrimination in Employment Act, as amended, Title VII of the Civil Rights Act of 1964, as amended (including amendments contained in the Civil Rights Act of 1991), the Americans With Disabilities Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, the Employee Retirement Income Security Act, state antidiscrimination statutes, other state or local laws regarding employment, common law theories such as breach of express or implied contract, wrongful discharge, defamation, and negligent or intentional infliction of emotional distress.[8]:

- "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or part of this Agreement is void or voidable."[9]

- And, if a judge or arbitrator found any portion of the Employment Agreement invalid or unenforceable, the invalidated portion may be severed or modified to permit the Employment Agreement to be enforced to the maximum extent permitted under law.[10]

Ms. Kitchengs and a representative for Cintas signed the Employment Agreement in the presence of two employee witnesses[11]:

ASIDE FROM THE AMOUNTS OF EMPLOYEE'S COMPENSATION AND EMPLOYEE'S ENTITLEMENT TO BENEFITS, THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN EMPLOYER AND EMPLOYEE REGARDING SUBJECTS ADDRESSED HEREIN, AND THE PARTIES CAN AMEND OR MODIFY THIS AGREEMENT ONLY BY A SUBSEQUENTLY-EXECUTED WRITTEN AGREEMENT SIGNED BY BOTH PARTIES.

EMPLOYEE WITNESSES:

*signature*
NAME PRINTED: Denise Tanner

*signature*
NAME PRINTED: Brian Max Bentley

EMPLOYEE:

*signature*
NAME PRINTED: Alexa Kitchengs
TITLE: Sales Specialist
LOC.#: D47

EMPLOYER WITNESSES:

*signature*
NAME PRINTED: Denise Tanner

*signature*
NAME PRINTED: Brian Max Bentley

CINTAS CORPORATION – EMPLOYER

*signature*
NAME PRINTED: Mark Direnzo
TITLE: General Manager
LOC.#: D47

*Ms. Kitchengs files suit without arbitration.*

Cintas fired Ms. Kitchengs on February 23, 2023.[12] Ms. Kitchengs dual-filed a charge of discrimination with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission in August 2023.[13] The Pennsylvania Human Relations Commission issued a Right to Sue Letter received by Ms. Kitchengs on August 20, 2024.[14] The Equal Employment Opportunity Commission issued a Notice of Right to Sue Letter received by Ms. Kitchengs on September 9, 2024.[15]

4

Ms. Kitchengs did not notice a claim for arbitration to further pursue her employment dispute. She instead sued Cintas here for violating Title VII of the Civil Rights Act of 1964, the Family Medical Leave Act, the Americans with Disabilities Act, and the Pennsylvania Human Relations Act to redress employment discrimination and retaliation based on gender and disability.[16] Ms. Kitchengs specifically alleges Cintas fired her because she is a woman and due to her bipolar disorder diagnosis.[17]

## II.  Analysis

Cintas timely moves to compel arbitration.[18] Ms. Kitchengs counters she never agreed to forgo a jury trial in favor of arbitration. We disagree. We today compel timely arbitration and stay the progress in this Court with ongoing reporting and show cause obligations to ensure the parties comply with Rule 1.

Congress through the Federal Arbitration Act enables judges to enforce a contract to arbitrate after we "hear the parties" and are "satisfied that the making of the agreement for arbitration . . . is not in issue[.]"[19] We turn to "ordinary state-law principles that govern the formation of contracts" to determine whether the parties agreed to arbitrate.[20] We must apply Pennsylvania state contract law today and determine whether "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of the agreement."[21] Pennsylvania and federal law both strongly favor enforcing arbitration agreements.[22]

There are "two distinct paths" we may follow in making this determination.[23] "[W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,'" a party's claims "are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay."[24] "But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the

plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.'"[25]

"An arbitration clause may be deemed apparent when the contract in which the arbitration clause appears is integral to or relied upon in the complaint."[26] And although we generally cannot review issues or materials extraneous to the pleadings under 12(b)(6), "'a document integral to or explicitly relied upon in the complaint' may be considered."[27] This consideration makes sense as "[i]t would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints."[28] Therefore, "[t]he Rule 12(b)(6) standard is appropriate where the claims the plaintiff brings in his or her complaint are subject to arbitration provisions that the defendant may submit in response to the complaint."[29]

We find the Employment Agreement between Cintas and Ms. Kitchengs integral to this dispute. We review Cintas's motion under the Rule 12(b)(6) standard. Ms. Kitchengs agreed her Employment Agreement governed her employment discrimination lawsuit. Cintas attached the agreement to its Motion to compel.[30] Ms. Kitchengs does not dispute the authenticity of the attached Employment Agreement. We may consider the Employment Agreement attached to Cintas's representative's declaration and no discovery is warranted.

### A. Ms. Kitchengs delegated all issues of contract validity and interpretation to the arbitrator.

Judges generally decide substantive arbitrability issues unless the parties contract for another arbiter. Ms. Kitchengs did. She agreed "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation,

applicability, enforceability or formation of this Agreement including, but not limited to, any claim that all or any part of this Agreement is void or voidable."[31]

The Supreme Court in *Rent-A-Center, West, Inc. v. Jackson* instructed parties may contractually agree to submit arbitrability questions to the arbitrator rather than a court.[32] Such provisions—called delegation provisions—confer on the arbitrator authority to decide "gateway" or "arbitrability" issues including whether the parties agreed to arbitrate or whether their agreement covers a particular controversy.[33] An agreement to arbitrate "gateway" issues of arbitrability "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the [Federal Arbitration Act] operates on this additional arbitration agreement just as it does on any other."[34] So, "unless the party opposing arbitration challenges the delegation provision specifically, the district court must treat it as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the arbitrator."[35] Ms. Kitchengs does not challenge the delegation clause she signed. It is enforceable.[36]

"In addition, parties may clearly and unmistakably delegate arbitrability issues to an arbitrator by incorporating by reference the American Arbitration Association ("AAA") or the Judicial Arbitration and Mediations Services ("JAMS") rules[,]" which the parties have done here.[37] The parties specifically incorporated "the AAA's Employment Arbitration Rules and Mediation Procedures" and provided a link to those Rules.[38] The American Arbitration Association in Rule 6(a) of its Employment Rules states "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."[39] The delegation clause is enforceable under the incorporated American Arbitration Association Employment Rules.

The validity and applicability of the arbitration clause in the Employment Agreement is a matter for the arbitrator.[40]

### B. We stay these proceedings pending timely progress through arbitration.

"[T]he plain language of [section 3 of the Federal Arbitration Act] affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."[41] We stay the matter subject to reporting timely progress in the chosen forum while holding our progress in abeyance but consistent with Rule 1.[42]

### III. Conclusion

We grant Cintas's Motion to compel, order Ms. Kitchengs to the arbitration she agreed to pursue in her employment agreement, and stay the action subject to reporting progress consistent with Rule 1.

---

[1] ECF 1 ¶ 15.

[2] ECF 1 ¶ 17. Cintas provides a range of safety products and services, including fire inspections. *Id.* ¶ 13.

[3] ECF 6-3.

[4] *Id.* at 9.

[5] *Id.*

[6] *Id.* at 10.

[7] *Id.*

[8] *Id.* at 9–10.

[9] *Id.* at 11.

[10] *Id.*

[11] *Id.* at 12.

[12] ECF 1 ¶ 63.

[13] *Id.* ¶ 6.

[14] *Id.* ¶ 7.

[15] *Id.* ¶ 9.

[16] *Id.* ¶ 1.

[17] *Id.* ¶¶ 63–73.

[18] ECF 6.

[19] 9 U.S.C. § 4.

[20] *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[21] *Id.* (applying Pennsylvania law and citing *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005), then citing *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 283 n. 3 (Pa. Super. 2005)).

[22] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) ("[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration . . . any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))); *In re Est. of Atkinson*, 231 A.3d 891, 898 (Pa. Super. 2020) ("Both Pennsylvania and federal law impose a strong public policy in favor of enforcing arbitration agreements.").

[23] *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024).

[24] *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Cap. Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)).

[25] *Id.* (quoting *Somerset*, 832 F. Supp. 2d at 482).

[26] *Deardorff v. Cellular Sales of Knoxville, Inc.*, No. 19-2642, 2022 WL 407396, at *3 (E.D. Pa. Feb. 9, 2022) (cleaned up) (quoting *Lawson v. City of Phila.*, No. 18-1912, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019)).

[27] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)); *Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 315 (E.D. Pa. 2017) (considering employment agreement in deciding whether to grant a motion to compel arbitration under Rule 12(b)(6)).

[28] *Hewitt v. Rose Grp.*, No. 15-5992, 2016 WL 2893350, at *2 n.1 (E.D. Pa. Mar. 21, 2016) (emphasis added).

[29] *Mack v. Progressive Corp.*, No. 23-2430, 2024 WL 1120377, at *3 (E.D. Pa. Mar. 14, 2024); *see also Lawson*, 2019 WL 934976, at *4 (Rule 12(b)(6) standard applied when plaintiffs claimed

---

they were denied pay and defendant submitted documents containing arbitration provisions at issue).

[30] ECF 6-3.

[31] *Id.* at 11.

[32] 561 U.S. 63, 68–69, 71 (2010).

[33] *Id.* at 68–69.

[34] *Id.* at 70.

[35] *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020) (cleaned up) (quoting *Rent-A-Ctr.*, 561 U.S. at 72).

[36] *Carrone v. UnitedHealth Grp. Inc*, No. 20-2742, 2021 WL 3520809, at *3 (3d Cir. Aug. 11, 2021) ("Because Carrone has not put the formation or existence of the delegation provision at issue, she must abide by the arbitration contract she signed.").

[37] *Deardorff*, 2022 WL 407396, at *8 (collecting cases); *see also Richardson v. Coverall N. Am., Inc.*, 811 F. App'x 100, 103 (3d Cir. 2020) (the agreement provided "'all controversies, disputes or claims . . . shall be submitted promptly for arbitration' and that 'arbitration shall be subject to . . . the then current Rules of the American Arbitration Association for Commercial Arbitration.' Clearly and unmistakably then, the AAA Rules govern . . . [a]nd Rule 7(a) of the AAA Rules states that 'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.'").

[38] ECF 6-3 at 11.

[39] AAA Emp't Arbitration R. 6.

[40] It appears, subject to presenting the issues to the arbitrator or should the parties' argue their willingness to present these issues to us in their briefing constitutes a waiver of the delegation clause, a valid agreement to arbitrate exists and Ms. Kitchengs's employment discrimination suit falls squarely within the scope of the Employment Agreement arbitration clause.

Whether a valid agreement exists is determined by state contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). "[I]n order to form an enforceable contract, there must be an offer, acceptance, consideration or mutual meeting of the minds." *Jenkins v. Cty. of Schuylkill*, 658 A.2d 380, 383 (Pa. Super. Ct. 1995) (citing *Schreiber v. Olan Mills*, 627 A.2d 806, 808 (Pa. Super. Ct. 1993)). Cintas offered Ms. Kitchengs employment, Ms. Kitchengs accepted the benefits of this employment, and the parties expressed their agreement to be bound in a contract signed by the parties in the presence of witnesses. The parties do not dispute the validity of the Employment Agreement and we find no grounds on which they might dispute its validity on the face of the document. Ms. Kitchengs argues she did not mutually assent to waiving her right to sue in court

because the arbitration clause was unclear. But, as detailed above, the contract couldn't be clearer. Ms. Kitchengs agreed to be bound.

And the parties agreed the claims subject to arbitration "specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under . . . Title VII of the Civil Rights Act of 1964, . . . the Americans with Disabilities Act, . . . [and] state anti-discrimination laws[.]" ECF 6-3 at 9–10. Ms. Kitchengs's federal and state discrimination and retaliation claims fall within the scope of the parties' agreement to arbitrate contained in their broader Employment Agreement.

Congress did not limit our power to compel arbitration here in section 1 of the Federal Arbitration Act, which excludes certain "contracts of employment." *See Harper v. Amazon.com Servs., Inc.*, 12 F.4th 287, 292–93 (3d Cir. 2021). In section 1, Congress provided "nothing" in the Federal Arbitration Act "shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Our Supreme Court directs "Section 1 exempts from the FAA only contracts of employment of transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). We have no basis to find Ms. Kitchengs acted as a transportation worker triggering this exemption.

[41] *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004); *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

[42] 9 U.S.C. § 3.